# Pellio, Appellant, *v.* Bulls Head Coal Company.

*Corporations—Fraud by corporation—Purchase of stock from stock-holders.*

Where a stockholder of a corporation has been induced by the fraudulent representations of the officers of the company to sell his stock to the company at a price much below its real value, a court of equity will direct a reassignment of the stock to the stockholder on his repayment to the company of the purchase price, but it will not in the same proceeding inquire into the business of the company, order an accounting and compel the repayment to the company of money fraudulently taken from it by the officers under the guise of salary.

Argued Feb. 22, 1909.   Appeals, Nos. 28 and 290, Jan. T., 1908, by plaintiff and defendants, from judgment of C. P. Lackawanna Co., May T., 1907, No. 1, on bill in equity in case of John W. Pellio v. Bulls Head Coal Company and David J. Whiteford.   Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Bill in equity to compel the reassignment of stock of a corporation.

EDWARDS, P. J., filed the following opinion:

### FINDINGS OF FACT.

1. The Bulls Head Coal Company was organized and incorporated in January, 1901, for the purpose of mining coal in the city of Scranton.   The authorized capital stock was $25,000, divided into 250 shares each of the par value of $100.   The evidence shows that $22,500 of the stock was issued and that some time after the organization of the company the stock was held as follows:

| | |
|---|---|
| Charles A. Burr | 100 shares. |
| David J. Whiteford | 90 shares. |
| William M. Whiteford | 10 shares. |
| W. E. Stibbs | 10 shares. |
| Ira T. Brown | 5 shares. |
| Eugene F. Marsh | 5 shares. |
| J. W. Pellio (plaintiff) | 5 shares. |

2. The company after its incorporation proceeded to mine coal. Charles A. Burr was president of the company, and David J. Whiteford was secretary and treasurer. The company had directors—Burr, David J. Whiteford, William M. Whiteford, Marsh and Pellio—but the business of the company was carried on in a very informal way, the president and the secretary (Burr and D. J. Whiteford) being in charge of the business and conducting it as they saw fit. There were no stated meetings of the board of directors except the annual meeting held when the parties met as stockholders. Mr. Burr died in June, 1904, and from that time to September, 1906, the business of the company was managed by David J. Whiteford, aided in an informal way by Mrs. Burr who became the owner of the Burr stock—100 shares.

3. The plaintiff, at the solicitation of David J. Whiteford, sold his five shares of stock to the Bulls Head Coal Company for the sum of $1,000, on August 17, 1906. The plaintiff himself does not know whether Whiteford or the company was the purchaser, the transfer of the stock certificate having been signed in blank; but the evidence shows that the stock was paid for with the company's check, signed by Whiteford as treasurer. The plaintiff, claiming that fraud had been practiced upon him and that he had been deceived as to the financial condition of the company and as to the value of the stock, demanded a reassignment of his stock, tendering to Whiteford, and through him to the company, on March 18, 1907, the sum of $1,000 and interest from August 17, 1906. The reassignment of the stock was refused.

4. The offer to buy plaintiff's stock came from Mr. Bradbury, who was acting for one or both of defendants. Before agreeing to sell his stock, plaintiff consulted Whiteford as to the condition of the mine and the value of the stock. The substance of the information given plaintiff was that the mine was about worked out and that $300 would be a good price for his stock. This information was not only misleading; it was false; and the evidence pointing to this conclusion is of a very convincing character, as will be seen from our next finding.

5. The mining operation carried on by the defendant company was a small one.   When the operation was started the president and treasurer each had a salary of $75.00 per month as compensation for managing the affairs of the company. Some time afterwards these two officers each received $500 per month.   Up to April, 1904, they had drawn from the treasury of the company in salaries the sum of $25,000.   In April, 1904, the salary of each of the two persons named was $1,000 per month, and we find that the sum of $49,000 was paid out in this way from May, 1904, to July 10, 1906.   The $1,000 per month, was paid to Mr. Burr a month or two before he died, and the same sum was continued to his widow.   Whiteford received the same sum.   The payment of these large sums in the guise of salaries was without the authority of the board of directors and without the knowledge of some of the directors.   The evidence shows further that at the time Whiteford was arranging to buy plaintiff's stock and when Whiteford said the stock was worth only $300, the company had a large amount of cash in the treasury; that is, on July 31, 1906, the cash balance was $14,496.01, and on August 31, 1906, it was $13,278.38.

6. It is established by the evidence that the defendants, one or the other of them, purchased the stock of Mr. Marsh, five shares, and that an effort was made to buy the stock of Ira T. Brown, five shares, from the executor of Brown, through Mr. Reynolds, attorney for the estate.   Whiteford made the same kind of representations to Mr. Marsh and Mr. Reynolds that he had made to the plaintiff.   He said that the property of the company was exhausted and that the assets of the company consisted of some old mine cars, some mine mules and some wornout machinery.   There seems to have been a systematic effort on the part of the defendant Whiteford to buy out the small stockholders at as low a price as possible, and, to accomplish this purpose, that the property was, to say the least, unduly depreciated and the actual condition of the company concealed.   Nothing was said as to the distribution of $49,000 in salaries in about two years to two of the officers of the company, without authority of law.

7. It is not necessary for us to ascertain the precise value of

plaintiff's stock when he sold it to the company. It is sufficient to state that the value of the stock was much in excess of the amount paid for it, and that the plaintiff was induced to part with his stock by means of false representations made by the defendant who was acting in his own interest and in the interest of the other large stockholder.·

8. About November, 1906, David Spruks became interested in the Bulls Head Coal Company. He bought 100 shares of stock from the Burr estate, paying $15,000 for them; five shares from E. F. Marsh and five shares from the Brown estate. For the 110 shares he paid altogether over $19,000. He knew that the company had purchased the plaintiff's five shares, because he saw the certificate of stock, marked "cancelled" in the treasury. Spruks reorganized the company in the sense that the company had new stockholders, a new board of directors and new officers, and the company continued to mine coal. The company, as a corporation, was the same.  ·

9. When Spruks and his fellow stockholders took charge of the company the money in the treasury was a part of the assets. The new stockholders had the benefit of all the assets, and the testimony of Spruks is that there was about $13,000 in the treasury.

10. I can find no laches on the part of the plaintiff in the assertion of his rights. As soon as he discovered the unlawful acts of the officers of the company, he proceeded with reasonable diligence to secure a reassignment of his stock.  ·

### CONCLUSIONS OF LAW.

·  The only question that can be considered in this case is the right of the plaintiff to a return of his stock to him on payment to the company of the sum tendered to it on March 18, 1907. Having found as a matter of fact that plaintiff was deceived by an officer of the company as to the value of the stock, and that an intentional fraud was committed by the company upon the plaintiff, I have no hesitation in concluding that the plaintiff is entitled to a reassignment of his stock.

Plaintiff's counsel claims that the court has the power in the present case to inquire into the business of the company;  .

to order an accounting, and to compel the repayment into the company's treasury of the large sums of money fraudulently taken therefrom under the guise of salaries.   This position is untenable.   These questions may arise as soon as the plaintiff becomes again a stockholder.   The defendant company at the instance of a stockholder may be compelled to take legal measures to recover moneys unlawfully appropriated by its officers; and on the failure of the company to do so, after notice, a stockholder possibly may do so.   But this question is not before us now.   The prayer of the plaintiff for such relief is denied.

The final decree was as follows:

Now, September 22, 1908, this cause came on to be heard, and was argued by counsel, and on consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the Bulls Head Coal Company, through its proper officers, is directed and commanded to transfer and reassign or issue to John W. Pellio, five shares of the capital stock of said company, assigned or surrendered to said company by the plaintiff on August 17, 1906, on the payment by the plaintiff to said company of $1,000, with interest from August 17, 1906, to March 18, 1907.

A decree is refused against said David J. Whiteford.

2. An injunction is awarded against the Bulls Head Coal Company, restraining said company and its officers from selling, transferring, or issuing the five shares of stock aforesaid to any other person than the plaintiff.   Bond required in the sum of $500.

3. The Bulls Head Coal Company, defendant, is directed to pay the costs of these proceedings.

*Error assigned* by defendant was the decree of the court.

*Error assigned* by plaintiff was in overruling various exceptions to refusal of plaintiff's requests for an accounting against the company and a decree against D. J. Whiteford.

*C. Comegys* and *I. H. Burns,* for the Bulls Head Coal Company.—A bill in equity does not lie, under the facts in this

case, and should have been dismissed. The position and action of the plaintiff precludes him from relief in this form of action: Phœnix Iron Co. v. Com., 113 Pa. 563; Com. v. Phœnix Iron Co., 105 Pa. 111; Com. ex rel. Wolf v. Penna. R. R. Co., 6 Pa. Dist. Rep. 266; Beach on Modern Equity Jurisprudence, p. 18; Dent v. Ferguson, 132 U. S. 50 (10 Sup. Ct. Repr. 13); Bartle v. Nutt, Admr. of Coleman, 29 U. S. 184; Bangor, etc., Ry. Co. v. Slate Co., 203 Pa. 6; Kimmel v. Stoner, 18 Pa. 155; Coleman v. Columbia Oil Co., 51 Pa. 74.

*Samuel B. Price,* for John W. Pellio.—In all business relations and contracts, a party has the right to rely on the express statement of an existing fact or facts, the truth of which is known to the opposite party and not known to him: Smith on Law of Fraud, sec. 87; McClellan v. Scott, 24 Wis. 81.

Where there is a relation of trust and confidence, a person may rely on the truthfulness of the representation made by the person in whom he trusts: Smith on Law of Fraud, sec. 87.

The court should have entered a decree against Whiteford: Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398.

A stockholder may sue the corporation when notice to the officers would have been useless: Wolf v. Penna. R. R. Co., 195 Pa. 91; Knoop v. Bohmrich et al., 49 N. J. Eq. 82 (23 Atl. Repr. 118); Bohmrich v. Knoop, 50 N. J. Eq. 485 (27 Atl. Repr. 636); 3 Cook on Corporations, sec. 741; Peabody v. Flint, 88 Mass. 52; Brewer v. Boston Theater, 104 Mass. 378; Davis v. Gemmell, 73 Md. 530 (21 Atl. Repr. 712); Treat v. Insurance Co., 203 Pa. 21; Wickersham v. Crittenden, 93 Cal. 17 (28 Pac. Repr. 788); Moyle v. Landers, 83 Cal. 579 (23 Pac. Repr. 798).

The directors and officers of a corporation may be sued personally for misappropriation of funds: Watts's App., 78 Pa. 370; Spering's App., 71 Pa. 11; Cunningham v. Pell, 5 Paige (N. Y.), 607.

In equity a suit should include and conclude the whole subject: McGowin v. Remington, 12 Pa. 56; Souder's App., 57 Pa. 498; Orr v. Peters, 197 Pa. 606; Allison's App., 77 Pa. 221.

PER CURIAM, April 12, 1909:

The decree directing the issue of shares of stock to the plaintiff is affirmed, and his cross appeal is dismissed on the findings of fact and conclusions of law by the learned judge of the common pleas.